UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS URBANSKI | : | |
|     Plaintiff | : | No. 3:18-cv-01323(VLB) |
| | : | |
| v. | : | |
| | : | |
| DEP'T OF CORRECTION, ET AL. | : | December 5, 2019 |
|     Defendants | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants', Correction Officer Brandon Hunter ("CO Hunter") and Dr. Cary Freston ("Dr. Freston"), Motion for Summary Judgment [Dkt. 26]. Plaintiff Thomas Urbanski, formerly incarcerated at the Osborn Correctional Institution in Somers, Connecticut alleges deliberate indifference to safety and failure to protect against CO Hunter and deliberate indifference to medical needs against Dr. Freston. [Dkt. 1 (Compl.)]. For the reasons set forth below, the Defendants' motion for summary judgment is GRANTED and Plaintiff's claims are DISMISSED.

**Background**

I.    **Plaintiff's allegations**

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most favorable to

1

the non-movant, Mr. Urbanski. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[1] The parties agree on most of salient facts.

Plaintiff was housed at Osborn Correctional Institution ("Osborn") from December 12, 2017 until his discharge from custody in October 17, 2019. [Def. D. Conn. Civ. L. R. 56(a) ¶ 3]. The Complaint was filed during his period of incarceration. *Id.* ¶ 1. Plaintiff is wheelchair bound. *Id.* ¶ 5.

On December 22, 2017, Plaintiff was transported via specialized van by CO Hunter to the UConn Health Center ("UConn"). *Id.* ¶ 5. The purpose of the trip was a follow-up appointment for Plaintiff's left wrist. [Pl. Ex. A (Pl. Aff.) ¶ 2]. CO Hunter locked the wheels to Plaintiff's wheelchair and secured at least the back wheels to the van with floor straps, but Plaintiff's seat belt was not secured. *Id.* ¶ 6; [Pl. Ex. A (Pl. Aff.) ¶ 7]; [Pl. Ex. D (12/22/2017, Hunter incident report)]. CO Hunter handcuffed Plaintiff's right wrist to the wheelchair's frame. [Pl. Ex. A (Pl. Aff.) ¶ 4]. Plaintiff alleges that he asked CO Hunter to secure his seatbelt, but CO Hunter refused. *Id.* at ¶ 8. He also alleges that CO Hunter drove erratically. *Id.* at ¶ 9.

Plaintiff was injured en route when his wheelchair tipped over. [Pl. Ex. D (12/22/2017, Hunter incident report)] ("I heard yelling coming from the back of the van. I looked in the rearview and noticed Inmate Urbanski had tipped over out of his wheelchair"); [Pl. Ex. A (Pl. Aff.) ¶ 10]. He was transported via ambulance to

---

[1] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [26] and Plaintiff's Opposition [31] by exhibit numbers only. i.e. [Def. Ex.1] and [Pl. Ex. B]. Citation to the Defendant's. D. Conn. Civ. L. R. 56(a) statement is applicable where the Plaintiff admits to the fact as stated.

2

UConn's emergency room. [Pl. Ex. A (Pl. Aff.) ¶ 14]; Def. D. Conn. Civ. L. R. 56(a) ¶ 9. The emergency room records show that Plaintiff presented with pain in his right arm, neck, and back. [Def. Ex. L (12/22/2017 Hosp. Record) 2, 3]. An x-ray of Plaintiff's right forearm and right wrist showed no evidence of fracture or dislocation. *Id.*; Def. D. Conn. Civ. L. R. 56(a) ¶ 11. Plaintiff was discharged the same day. Def. D. Conn. Civ. L. R. 56(a) ¶ 15. The UConn treating physician recommended follow-up treatment with "tramadol and NSAIDs as tolerated for pain." Def. D. Conn. Civ. L. R. 56(a) ¶ 13.

Upon his return to Osborn, Plaintiff was prescribed various medications, including an NSAID and Gabapentin/Neurontin, a nerve modulating pain medication. *Id.* at ¶ 17. Plaintiff received an x-ray on his left hand on May 14. 2018 after he suffered a seizure on May 4, 2018. *Id.* ¶ 18. Plaintiff alleges that Dr. Freston at Osborn failed to sufficiently treat Plaintiff's chronic pain because he only prescribed Tylenol, he did not willingly order an x-ray of Plaintiff's left wrist after his May 2017 seizure, and he made callous comments to Plaintiff. [Pl. Ex. B (Pl. Aff.) ¶¶ 1, 11-25].

On May 25, 2018, Plaintiff submitted an inmate administrative remedy form stating that he was being denied any type of pain medication. [Def. Ex. I at 10-13]. Thereafter, on August 1, 2018 Dr. Johnny Wright referred Plaintiff to a specialist, which resulted in a cervical epidural steroid injection as part of a new pain management plan. [Pl. Ex. B (Pl. Aff.) ¶ 23].

## II. Connecticut Department of Correction administrative grievance protocol

The parties also largely agree on the salient facts concerning the Connecticut Department of Correction's ("DOC") grievance protocols and Plaintiff's filings, but the disagree about whether Plaintiff legally satisfied the exhaustion requirement.

Administrative Directive 9.6(6)(A) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. [Def. Ex. F. (DOC Admin. Directive 9.6(6)(A) 5)].[2] "If the verbal option does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form. The inmate must clearly state the problem and the action requested to remedy the issue." *Id.* If the inmate is dissatisfied with the informal resolution offered, of if the official fails to respond within fifteen business days, the inmate must file a grievance. DOC Admin. Directive 9.6(6)(C). The grievance (form is CN 9602) must be filed within 30 calendar days "of occurrence or discovery of the cause of the grievance" and the appropriate correctional official has 30 days to respond. *Id.*; *see, i.e.* [Def. Ex. D (Pl. Level-1 Grievance, 06/10/2018)]. A copy of the Inmate Request Form (9601) must be included with the grievance (9602) or an inmate must explain its absence. *Id*. The correction official's response to the first level grievance may be appealed within five days of receipt of the response. DOC Admin. Directive 9.6(6)(K). Level 2 is the final appeal, with limited exceptions not at issue here. *Id.*

---

[2] The Administrative Directives are in the record; however, the Court can also take judicial notice of the State of Connecticut Administrative Directives that are found on the [DOC] website. *Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at *3 n.1 (D. Conn. Apr. 16, 2015).

At Osborn, inmates file their Inmate Request Forms, grievances, and grievance appeals in designated "Administrative Remedies" boxes. Def. D. Conn. Civ. L. R. 56(a) ¶ 29. Each grievance and grievance appeal at Osborn is logged and maintained by Officer Steven Acanto. *Id.* ¶¶ 30-32.

A different administrative remedy enables an inmate to seek formal review of "any health provision, practices, diagnosis or treatment." [Def Ex. J] (DOC Admin. Directive 8.9(1), Health Services Review)]. Administrative Directive 8.9 sets forth two types of health service review: (1) the review of a diagnosis and treatment and (2) the review of an administrative issue. DOC Admin. Directive 8.9(9). The review of treatment and diagnosis includes a decision not to treat an inmate or a condition. DOC Admin. Directive 8.9(9)(A).

Like an administrative grievance, an inmate must first attempt to seek an informal resolution using a written request form CN 9601. DOC Admin. Directive 8.9(10). If the inmate is dissatisfied with a diagnosis of treatment, and attempted informal resolution does not resolve the issue, the inmate may file a Health Services review using CN Form 9602. DOC Admin. Dir. 8.9(11). Inmates at Osborn file their health services reviews in a designated "Health Service Review/Remedies" box and are logged accordingly. Def. D. Conn. Civ. L. R. 56(a) ¶¶ 46-49. During his incarceration, Plaintiff filed six health service reviews, which will be discussed in the fact section pertaining to Plaintiff's claims against Dr. Freston. [Def. D. Conn. Civ. L. R. 56(a) ¶ 50].

5

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); see *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *14 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

However, a party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb*, 84 F.3d at 518 (citations omitted). Nor will "conclusory statements, conjecture, or speculation by the party resisting the motion" defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## Analysis

In their motion for summary judgment, the Defendants argue that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [Dkt. 26 (Def. Mot. for Summary Judgment) 1]. The Defendants also argue that, even if administrative remedies were exhausted, Plaintiff cannot show that either defendant violated his constitutional rights.

1. Rule of Exhaustion

The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under § 1983… or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

7

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In enacting § 1997e, Congress sought to afford prison officials time and opportunity to address complaints internally and reduce the quantity, and improve the quality, of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The exhaustion requirement applies to "…'all available' remedies, not just those that meet federal standards, "when where the relief sought-monetary damages- cannot be granted in the administrative process" before proceeding to federal court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)).

In *Woodford*, the Supreme Court interpreted the PLRA to require "proper exhaustion." 548 U.S. at 87-103. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 83-84). Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Block*, 549, U.S. 199, 216 (2007). Defendants bear the burden of proving non-exhaustion. *See Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *3 (D. Conn. June 28, 2019).

The Supreme Court has identified three circumstances in which an administrative remedy cannot be used by an inmate to obtain relief: "(1) the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to

8

consider them . . . [ (2) ] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements ... [a]nd [ (3) ] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016). None of the exceptions to proper exhaustion are relevant here.

2. <u>Whether Plaintiff exhausted administrative remedies as to CO Hunter</u>

On December 29, 2017, Plaintiff filed an Inmate Request (CN 9601) to Osborn's Deputy Warden explaining his injuries in the van the prior week. [Pl. Ex. C (Inmate Request Form)]. The Inmate Request states that "there is no remedy for what I went through, and the pain I'm in now. All I want to do is finish my DUI Home confinement program…" *Id*. In response, the warden stated that "I am well aware of the incident where you were taken to the ED…You have been seen numerous times by medical. Please let them know if you have any other concerns." *Id*. Plaintiff concedes that did not file a Level 1 or Level 2 grievance arising from the December 22 incident. Def. D. Conn. Civ. L. R. 56(a) ¶ 39; Pl. D. Conn. Civ. L. R. 56(a) ¶ 39.[3]

The sole issue is whether Plaintiff exhausted administrative remedies as to his claims against CO Hunter by timely filing an Inmate Request (CN 9601) on

---

[3] During the pendency of his incarceration, Plaintiff filed one grievance and no grievance appeals. *Id*. ¶ 33. Plaintiff filed a grievance on June 10, 2018. *Id*. ¶¶ 34-35; [Def. Ex. D]. The grievance seeks classification review for home confinement based on completion of program requirements but did not raise any issues related to the December 22, 2017 van incident. *Id*.

December 29, 2017, which Plaintiff argues satisfactorily resolved the issue. [Def. Ex. C]. The Plaintiff argues that, based on the plain language of DOC Admin. Directive 9.6, a Level 1 grievance is not required if the inmate receives a satisfactory resolution via the Inmate Request at the informal resolution stage. [Dkt. 31 (Pl. Opp. to Def. Mot. to Dismiss.) 4-5].

In reply, Defendants argue that Plaintiff did not receive a "satisfactory" response to his complaint regarding the conduct of CO Hunter, as no relief as to CO Hunter was sought and the form failed to "clearly state the problem and the *action requested* to *remedy the issue.*" [Dkt. 32 (Def. Reply) 1-6)] (citing to DOC Admin Dir. 9.6(6)(A)). Defendants further argue that Plaintiff could not be "satisfied" by the remedial training, as memorialized in Warden Faneuff's incident report, because the incident report was issued two months after the Inmate Request, the warden's response to the Inmate Request did not promise any relief, and Plaintiff received the incident report three months after the warden's response to the Inmate Request. [Dkt. 32 (Def. Reply Brief) 1-4)] (citing to ([Pl. Ex. C (Pl. 12/27/2017 Inmate Request) 2], [Pl. Ex. D. (Faneuff incident report)], [Dkt. 1 (Compl.) ¶ 51]).

"To fully exhaust, the plaintiff must go beyond the first step, seeking further stages of administrative review until the plaintiff has availed himself of the final stages of the administrative process. Here, plaintiff was required to exhaust his administrative remedies, by taking the grievance process to its final stage prior to filing this action." *Braham v. Armstrong*, No. 3:00-CV-261-AVCTPS, 2003 WL

25319421, at *3 (D. Conn. Apr. 24, 2003)(inmate did not file grievance based on perceived futility).

In *Davis v. Erfe*, the District Court held that an inmate-plaintiff failed to exhaust administrative remedies available under DOC Admin. Directive 9.6 when the Plaintiff submitted an Inmate-Request form, the Defendant testified in deposition that he satisfied with the informal resolution, and then declined to file a Level 1 grievance. ("Davis stated in his deposition that … he was satisfied with that result. He did not file a grievance over this incident. If Davis was not satisfied with the response to his Inmate Request, he was required to pursue the matter by filing a grievance. Because he concedes that he did not do so, the claim is unexhausted."). *Davis v. Erfe*, No. 3:15-CV-461 (SRU), 2016 WL 5109128, at *6 (D. Conn. Sept. 19, 2016) (citation to the record omitted).

The principle behind proper exhaustion is "…designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which <u>means using all steps that the agency holds out</u>, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (2006)(citation and parenetical in original)(underlying added)(quotation omitted).

Permitting inmate-plaintiffs to claim that they are satisfied by an informal resolution, then proceed to federal court without utilizing all steps made available

11

by the DOC creates an end run around the proper exhaustion requirement. This is especially true here, where the Plaintiff did not state the "action requested to remedy the issue" as required by DOC Admin. Directive 9.6(6)(A), and no remedial action is promised or referenced by the warden in response to the Inmate Request. [Pl. Ex. D].

Placing prison officials on notice of the subject matter of the inmate's grievance alone is insufficient. *See Macias v. Zenek*, 495 F. 3d 37, 43 (2d. 2007)). "To properly exhaust a § 1983 claim in Connecticut, a prisoner must comply with *all* steps set forth in Directive 9.6, including deadlines and utilization of each step of the administrative appeal process." *Id*. at 6 (emphasis in original). "If an agency *permits* an appeal, the PLRA's exhaustion requirement obligates the inmate to take the appeal." *Contino v. City of New York*, No. 11 CIV. 8537 DLC, 2013 WL 4015816, at *7 (S.D.N.Y. Aug. 7, 2013) (considering the New York City Department of Corrections inmate five step remedies protocol and argument that pursuit of an appeal was discretionary)(emphasis in original).

The Court agrees with the Defendant's argument that cited cases from outside of the Second Circuit are inapplicable. [Dkt. 32 (Def. Rep. Brief) n. 4]. First, in *Broadus v. Corrections Corp. of America, Inc.*, 167 Fed. App'x. 13 (2006), the Tenth Circuit affirmed the district court's dismissal for failure to fully exhaust administrative remedies by failing to proceed with grievance after submitting a "request to staff." *Broadus v. Corr. Corp. of Am.*, 167 F. App'x 13, 17 (10th Cir. 2006)(emphasis in original) ("Although his complaint included documentation showing that he submitted several requests to staff, there is no indication that he

ever properly filed a written grievance…Broadus was required to *fully* exhaust the prison's administrative procedures.")

The two of the three district court cases cited are factually distinguishable from this case because they address situations where a remedy promised at the first stage, but prison officials failed to carry it out. In *Agnes v. Joseph*, 2011 WL 5024443, at *1 (E.D.Cal., 2011), the Eastern District of California expressly considered the issue of situations where a prisoner "…initially received a satisfactory response, rely on it and then the satisfactory response is not carried out." In *Bivens v. Lisath*, No. 2:05-CV-0445, 2007 WL 2891416, at *6 (S.D. Ohio Sept. 28, 2007), the Court indicated that "[i]t was only when the prison officials did not carry through with their promise to Mr. Bivens that he became dissatisfied with the response."

Similarly, *Lay v. Hall*, No. CIVS052542LKKEFBP, 2007 WL 137155, at *5-6 (E.D. Cal. Jan. 17, 2007), *report and recommendation adopted*, No. CIV S-05-2542LKKEFBP, 2007 WL 704560 (E.D. Cal. Mar. 6, 2007) dealt with a situation where the inmate's grievance was partially granted (surgery) at the first formal appeal, but the inmate was not told that an additional appeal could be taken if he was dissatisfied. Here, Plaintiff does not suggest that he was somehow misled by prison officials as to his appeal rights after receiving partial relief.

Instead, proper exhaustion under DOC Admin. Directive 9.6 required Plaintiff to state the relief sought as to van accident, then file a Level I grievance, and Level 2 grievance, if it was not granted. The is no genuine issue of material fact that

13

Plaintiff failed to do so. Thus, summary judgment in favor of the CO Hunter is therefore warranted.

In light of this disposition, the Court declines to consider the merits of Plaintiff's deliberate indifference claim against CO Hunter.

### 3. <u>Failure to exhaust administrative remedies as to Dr. Freston</u>

Defendants also argues that Plaintiff failed to exhaust administrative remedies for claims of deliberate indifference to serious medical needs against Dr. Feston.

Before analyzing Plaintiff's health service review filings, it is necessary to define the scope of Plaintiff's claims in this action. Defendants argue that Plaintiff filed six health service reviews but none of them relate to injuries sustained to Plaintiff's right wrist following the van accident. [Dkt. 26 (Def. Mot for SJ) 15-17]. In response, Plaintiff argues that the claim is broader than failure to provide meaningful treatment for his injuries the December 22, 2017 transport van accident to include failure to his treat his chronic pain generally. [Dkt. 31 (Pl. Opp. to SJ) 5].

The Court agrees with the Plaintiff in so far as that a review of the claims against Dr. Freston in the Complaint allege that he failed to treat Plaintiff's injuries for the five months after the accident and stopped his medications, resulting in pain. [Dkt. 1 (Compl.) §§ 40-45, 47, 54, 58, 65]. Both the Complaint and the hospital records from UConn reflect that Plaintiff complained of head, neck, back and wrist pain. *Id.* § 34; [Def. Ex. L (UConn med. rec.)]. The hospital records clarify, however, that his right wrist was sprained during the van accident. [Def. Ex. L (UConn med. rec.) 3].

**The scope of Plaintiff's claims is necessarily limited by application of Fed. R. Civ. P. 20, which permits joinder of multiple defendants in one action only: "(a) if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and (b) any question of law or fact common to all defendants will arise in the action."**

**What constitutes the "same transaction, occurrence, or series of transactions and occurrences" is a case by case analysis.** *Velasco v. Semple*, **No. 3:19-CV-811 (KAD), 2019 WL 4060372, at \*2 (D. Conn. Aug. 28, 2019). This flexible rule considers whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."** *Harris v. Steinem,* **571 F.2d 119, 123 (2d Cir.1978).** *See* **7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed.2015) (discussing application of Fed. R. Civ. P. 13(a)'s "logical-relationship" test for counterclaims to joinder of parties under Fed. R. Civ. P. 20).**

**Misjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases because of the applicability of the three strikes and filing fee provisions of the Prison Litigation Reform Act.** *See George v. Smith,* **507 F.3d 605, 607 (7th Cir. 2007);** *Jones v. Howard*, **No. 3:15-CV-997 VAB, 2015 WL 4755751, at \*5 (D. Conn. Aug. 11, 2015;** *Webb v. Maldonaldo,* **No. 3:13-CV- 144 RNC, 2013 WL 3243135, at \*3 (D. Conn. June 26, 2013).**

Thus, for proper joinder here, Plaintiff's claims against Dr. Freston must arise from the same occurrence as December 22, 2017 van accident to be properly joined in Plaintiff's action against CO Hunter. In this case, means injuries plausibly alleged to be traceable to the accident. Allegations that Dr. Freston failed to treat Plaintiff's preexisting or subsequently developing medical symptoms or conditions, without plausible support for a logical connection between the condition and the van accident, reaches beyond the scope of the "same transaction or occurrence" as the claims against CO Hunter.[4]

Because the PLRA requires exhaustion of administrative remedies as to each claim, the Court must consider whether the Plaintiff's grievances "…contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) Thus, the issue here is whether Plaintiff's medical grievances would have placed Dr. Freston on notice of Plaintiff's claims for deliberate indifference for failure to treat injuries arising from the van accident, including head, neck, back and right wrist pain.

Based on the Court's review of the evidence, there exists no genuine issue of material fact with respect to whether the Plaintiff exhausted his administrative remedies. None of Plaintiff's health care reviews allege that Dr. Freston denied him pain medication as it relates to injuries sustained during the December 22, 2017

---

[4] The joinder rule also applies conversely. Plaintiff's claims that CO Hunter was deliberately indifferent to Plaintiff's safety by refusing to properly secure him in the van are not logically related to Dr. Feston's alleged refusal to treat Plaintiff's pre-existing or subsequently developing conditions.

accident. [Pl. Ex. C]. All of Plaintiff's medical complaints relate to dissonance between the care provided by DOC clinicians and the care he received for pre-existing medical conditions, or conditions developing after the December 22, 2017 accident, summarized as follows:

Inmate request forms (CN 9601):

[Pl. Ex. C at 6 (05/01/2018)]("[O]ut on the street…I was taken (sic) oxycodone and soma because I have post-traumatic brain trauma, my neck need severe surgery (sic)" and spinal damage]; *Id.* at 7-11(05/07/2018)(seizure, left wrist pain); *Id.* at 11 (05/07/2018)(same); *Id.* at 9-10(05/07/2018) (same, adding that Dr. Freston's treatment of Plaintiff's blood condition differs from care he received prior to incarceration); *Id.* at 21 (06/08/2018)(denied pain medication for severely injured spine); *Id.* at 23 (07/16/2018)(does not like the way new medication makes him feel)

Health Service Reviews (CN 9602):

[Pl. Ex. C at 13-14(05/22/2018)]("I had a seizure…and I think he [correctional officer] broke my left wrist.); *Id.* at 15-16 (05/24/2018)(Dr. Feston gave him blood pressure medication and blood thinners as substitute for periodic echocardiograms and electric cardiograms); *Id.* at 17-18 (05/25/2018) (lack of hematology/oncology testing); [Def. Ex. L at 4-5](05/25/2018)(seizure); [Pl. Ex. C. at 20-23] (06/05/2018)(denied pain medication for herniated discs, requests a specialist at UConn and a doctor other than Dr. Feston).

None of Plaintiff's Health Service Reviews, or Inmate Requests for that matter, grieve Dr. Feston's discontinuation of any care previously provided by UConn in response to injuries arguably traceable to the van accident. Plaintiff's contention that Dr. Feston was not treating back pain caused by a pre-existing condition was insufficient to place Dr. Feston or prison officials on notice of constitutionally inadequate treatment of conditions logically related to the van accident.

17

Plaintiff's affidavit for opposing summary judgment states that his pre-existing chronic pain and disc-degeneration were aggravated by the van accident, but Plaintiff never raised the exacerbation issue during the grievance process, nor provides evidence beyond Plaintiff's conjecture. *See* [Pl. Ex. B (Pl. Aff.) ¶ 8]. Because Plaintiff had DOC Admin. Directive 8.9 available to him to grieve any health care service problem but failed to do so as to claims that Dr. Feston refused to treat Plaintiff's injuries from the van accident, 42 U.S.C. § 1997e(a) requires the Court to grant Defendants' summary judgment motion.

### 4. Merits of Plaintiff's deliberate indifference to serious medical needs claim

Briefly, Plaintiff's claim also fails on the merits. As noted in the Court's initial review order ("IRO") [Dkt. 9], a disagreement over treatment does not rise to the level of an Eighth Amendment violation. *Siminausky v. Sean*, No. 3:14-cv-243(VLB), 2017 WL 391425, at *4 (D. Conn. Jan. 25, 2017) ("An exercise of medical judgment that results in a disagreement regarding treatment is not cognizable under the Eighth Amendment"). The IRO noted that the Complaint alleged that Dr. Feston provided *no* treatment for months after the accident, and thus stated a plausible claim for deliberate indifference to serious medical needs. [Dkt. 9 at 12-13]. However, in the IRO, the Court noted that Plaintiff did not allege what, if any, follow up treatment was prescribed by the emergency room doctor, and thus the claim was of "dubious merit." *Id*. at 13.

Now, on summary judgment, the Defendants point to, *inter alia*, Plaintiff's interrogatory response that "Dr. Freston treated me at Osborn" following the van incident and that Dr. Freston followed the UConn emergency room's discharge

paperwork recommending tramadol or NSAIDs for pain as tolerated. [Dkt. 26 (Def. Mot. for Summ. J.) at 20-24](citing Def. Ex. G (Pl. Resp. to Def. Interrog.) ¶ 9); [Def. Ex. L (UConn med. r.) 1). Plaintiff admits that, while at Osborn, he was prescribed an NSAID and a nerve modulating pain medication between December 2017 and February 2018. [Def. D. Conn. Civ. L. R. 56(a) ¶ 17]; [Pl. D. Conn. Civ. L. R. 56(a) ¶ 17]. UConn's discharge report shows that Plaintiff's right hand was not fractured and no further treatment was recommended beyond what Plaintiff received. [Def. Ex. L (UConn med. rec.) 1].

Accordingly, even if Plaintiff had fully exhausted his administrative remedies as to failure pain arising from the accident, his claim against Dr. Feston fails on the merits because it amounts to a disagreement about the course of treatment. Plaintiff's claims regarding injuries to his left wrist following a seizure or failure to treat chronic, pre-existing conditions, like a blood disorder or anxiety, is beyond the scope of this claim per Fed. R. Civ. P. 20.

## Conclusion

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment. The Clerk is directed to close this file.

IT IS SO ORDERED.

_Vanessa Lynne Bryant_ Vanessa Bryant
2019.12.05 15:24:42 -05'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut.